## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **ROBIN GRUBE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 1:14-cv-01294-DKL-RLY** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ENTRY ON JUDICIAL REVIEW

Robin Grube seeks judicial review of the decision of the Acting Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act and denying her application for supplemental security income under Title XVI of the Act. The parties have consented to have the undersigned conduct all proceedings in this case. Grube contends that the ALJ made several errors that require that her decision be set aside. After considering the administrative record and the parties' arguments, the Court decides as follows.

### I.      BACKGROUND

Grube applied for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning on August 1, 2007. She claimed disability due to glaucoma, fibromyalgia, hypertension, gastroesophageal reflux disease, osteoarthritis, and depression. A hearing was held before an administrative law

judge ("ALJ") in July 2012. Grube, represented by counsel, testified, as did a vocational expert ("VE"). Administrative Law Judge Blanca de la Torre issued her decision in March 2013, concluding that although Grube suffered from severe impairments, she was not under a disability because she retained the capacity to perform her past relevant and other work. The Appeals Council denied review, and Grube sought judicial review of the ALJ's decision.

At the hearing, Grube testified that she completed high school and was 49 years of age. She worked as a placement specialist in human resources, getting people jobs. She said that her hypertension was well-controlled with medication. Grube suffers from glaucoma and has been diagnosed with hepatitis C, which she said causes pain and swelling in her abdomen as well as fatigue. As of the date of the hearing, however, she had not received any treatment for her mild hepatitis. She testified that in the past year on two occasions she had pneumonia and was hospitalized. She also testified that she has fibromyalgia pain all over her body. The pain is aggravated by being up too long; too much walking and standing; as well as other activities. (R. 66.) Grube takes several pain medications. She had cataract surgery; her vision has improved but she described it as blurry. (R. 70.) She attributes headaches at the top of her left eye to pressure from glaucoma. Her glaucoma affects her peripheral vision. Grube testified that she can't look at a computer very long because her glaucoma "starts making like dark things move, and it makes my eyes hurt." (R. 68.) She said that she wrecked a car because of the effect on her peripheral vision. Grube stated that she also experiences shortness of breath 3 to 4

times a day, which is brought on by anxiety or emphysema.  She smokes a pack of cigarettes every 3 or 4 days.

In 2012, Grube saw psychiatrist Dr. Brock Nolan for symptoms of depression and anxiety.  She complained about stresses related to her family situation.  Grube testified that being in large groups makes her anxious and she cries "a lot," which she explained meant daily.  (R. 72.)  Dr. Nolan recommended that she see a therapist.  She saw a therapist once; he recommended that she not talk to her children, which was not what she thought she needed, so she had not gone back to the therapist.  (R. 57.)

Grube testified that she can only sit for half an hour at a time because of pain in her legs, which she attributed to fibromyalgia.  She said she can stand for 15 to 30 minutes.  She stated that she lies down "quite a bit" because her medication makes her groggy.  (R. 61.)  She can walk "maybe two blocks" with her cane.  (R. 62.)  Grube testified that Dr. Hensley prescribed her a cane the week before the hearing.  Grube said that she can lift 5 pounds at the most.  (R. 62.)  She also said that she sleeps 2 to 4 hours during the day.

The VE testified that he reviewed the vocational evidence and listened to Grube's testimony.  The ALJ asked him to assume a hypothetical person of Grube's age, education, and work experience who can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit stand and walk each 2 hours at a time, for a total each of 6 hours in an 8-hour workday; who can never claim ladders, ropes, or scaffolds but can occasionally climb stairs and ramps; balance, stoop, crouch, kneel, and crawl; and should avoid concentration exposure to extreme cold, heat, wetness, humidity, fumes, odors and gases.  The VE testified that the hypothetical person could perform Grube's past work as

an interviewer and store manager and that there were other occupations that she could perform, including apparel sorter, information clerk, and packager. (R. 75-76.) If the hypothetical person had to use a cane, she would still be able to perform the job of information clerk. (R. 77.)

The ALJ issued a decision denying Grube's application for benefits. The ALJ first determined that Grube met the insured requirements of the Act through March 31, 2009; therefore, Grube had to establish disability on or before that date to be entitled to a period of disability and disability insurance benefits. Applying the five-step analysis for DIB and SSI claims, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ found at steps one and two that Grube had not engaged in "substantial gainful activity" since her August 1, 2007 alleged onset date; that she suffered from the "severe" impairments of fibromyalgia, hypertension, glaucoma, and chronic obstructive pulmonary disease; and that she suffered from the nonsevere impairments of hepatitis C, degenerative disc disease, GERD, depression, anxiety, and pain disorder. At step three, the ALJ concluded that these impairments did not meet or equal the severity of any impairment listed in the regulations.

Therefore, the ALJ assessed Grube's residual functional capacity, finding that she had the capacity to perform a range of sedentary work. Specifically, the ALJ found that Grube "can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently"; "sit for 2 hours at a time and for a total of 6 hours in the workday"; "stand and walk, in combination, 1 hour at a time and for a total of 2 hours in the workday"; "occasionally can climb stairs and ramps, balance, stoop, crouch, kneel, and crawl, but never climb

ladders, ropes, or scaffolds"; and that she "need to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, and gases."  (R. 21.)  Although the ALJ did not make an explicit credibility finding, her decision reveals that she did not find Grube fully credible regarding her alleged intensity, persistence, and limiting effects of her pain and other symptoms.  (*See* R. 22-26.)  At step four, the ALJ determined that Grube was capable of performing her past relevant work as an interviewer.  Alternatively, at step five, the ALJ found based on the VE's testimony that Grube could perform other jobs existing in significant numbers in the national economy, including general office clerk and hand packager.  The ALJ concluded that Grube was not disabled through the date of the decision.  (R. 29.)

## II.   DISCUSSION

The Social Security Act provides for the payment of benefits to persons who have contributed to the program and suffer from a physical or mental disability.  It also provides for the payment of benefits to indigent persons under the Supplemental Security Income program.  A "disability" is the "inability to engage in any substantial gainful activity [because] of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last … not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

The Court's review of the ALJ's decision is "extremely limited."  *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).  The decision will be upheld so long as it applies the correct legal standards and is supported by substantial evidence.  *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp*, 795 F.3d at 718 (quoting *Elder*, 529 F.3d at 413). The Court may not reweigh the facts or evidence or make its own credibility determinations.  Even if reasonable minds could disagree regarding whether the claimant is disabled, the decision denying benefits must be affirmed if it is adequately supported. *Id.*  An ALJ need not specifically address every piece of evidence, *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008), but "must adequately discuss the issues" and "build an 'accurate and logical bridge from the evidence to [her] conclusion.'"  *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

Grube first argues that the ALJ's RFC finding did not sufficiently account for her glaucoma.  The ALJ acknowledged that Grube's glaucoma affects her vision, but found the objective medical evidence did not fully support her allegations regarding her vision impairments.  (R. 22.)  Medical evidence established glaucoma in both eyes that affected Grube's peripheral vision.   The ALJ found "no significant evidence demonstrating claimant's … glaucoma interferes with her ability to perform basic work related activities."  (*Id.*)  Indeed, the ALJ relied on the February 2011 eye exam based on which the physician diagnosed Grube with "glaucoma affecting her peripheral vision."  (R. 289.) Visual field charts reflected significant decrease in bilateral visual fields.  (R. 294-95.) However, no other limitations were noted.  (R. 289.)  Grube's visual acuity was 20/20 in the right eye and 20/25 in the left.  (R. 293.)  The ALJ also relied on the fact that Grube had two consultative examinations in May 2011 and neither examiner noted any difficulties due to her visual impairments.  (R. 22 (citing Ex. 4F and 5F).)

Furthermore, the ALJ cited a treating source's medical opinion from April 2011 given in connection with Grube's application for food stamps. The physician opined that Grube had limitations in standing and walking, but no limitations in visual function. Although the form included three spaces in which the physician could have written in "other" limitations, he did not indicate that Grube had any other limitations. (R. 343.) The ALJ properly inferred from the lack of any such notation that the physician did not find Grube to have any other limitations due to her visual impairments. Moreover, as the ALJ noted, in November 2011, Grube had glaucoma surgery to stabilize her visual function in her right eye and in May 2012 she had cataract surgery in her right eye. (R. 384-85, 606.) Her vision was noted as "stable" (R. 608) and it was noted on the post-operative report for the cataract surgery that Grube was "[p]leased with improved visual function." (R. 609.)

Although Grube argues that increased eye pressure causes pain and limits her ability to use a computer for a long period of time, there is no indication that the use of an anti-glare screen would not address any concerns with glare and eye strain from a computer screen. In light of the lack of any medical opinion or other substantial evidence that Grube had greater visual restrictions than those found by the ALJ, the Court finds that the ALJ sufficiently accounted for limitations due to Grube's glaucoma.

Grube also argues that the ALJ erred in failing to provide for greater restrictions due to her respiratory impairments. She found that Grube has a respiratory impairment, but continued to smoke cigarettes. The ALJ restricted Grube "to work that avoids concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors,

and gases" and concluded that "any greater work-related restrictions of respiratory irritants [was] unsupported." (R. 24.) Contrary to Grube's suggestion, the ALJ did not find that her respiratory condition was not severely limiting. Instead, she found that Grube suffered from chronic obstructive pulmonary disease and that this impairment was severe. (R. 16.) And the ALJ accounted for Grube's respiratory impairment by limiting her to "concentrated exposure" to respiratory irritants. Grube fails to point to any medical source opinion imposing any greater limitation on her exposure to respiratory irritants. In fact, Dr. Rosch opined that Grube could tolerate frequent exposure to humidity and wetness; dust odors, fumes and pulmonary irritants; extreme cold and heat. (R. 683.) The ALJ did not err in assessing the effects of Grube's respiratory impairment and the required restrictions.

Next, Grube contends that substantial evidence does not support the ALJ's conclusion that her mental impairments were non-severe. In reaching this conclusion, the ALJ cited the opinions of the state agency psychological consultants, the clinical findings of treating sources, and Grube's limited mental health treatment history. (R. 18-19.) The record supports the ALJ's conclusion that her mental impairments were non-severe. For example, in February 2012, Grube was seen by treating psychiatrist Nolan Brock, M.D., for depression and stress associated with family relationships. (R. 598.) Dr. Brock diagnosed recurrent, severe major depressive disorder and panic disorder. (R. 600.) After two months of treatment with prescription medications, however, he opined that her major depressive disorder was "mild" and advised her that he "believe[d]

industrious activities would be in her best interest." (R. 594.) Dr. Brock had recommended therapy, but Grube did not make an appointment to see a therapist. (*Id.*)

The state agency consultants' opinions also support the ALJ's finding. As Grube acknowledges, at her mental status examination in May 2011, the psychologist found that her ability for abstraction, general memory, and fund of information were only slightly affected by her impairment. (*Pl.'s Mem. In* Support at 25 (citing R. 304-10.)) The psychologist later concluded that Grube's "[o]verall cognitive efficiency appears to be adequate," that her general memory functioning was "intact" and that her "fund of general information appears to be adequate." (R. 310.) He noted that Grube reported depressive and anxious symptoms, but concluded that the symptoms did not "meet the full criteria for a dysthymic disorder, major depression or anxiety disorder, per se." (*Id.*)

Grube argues that her psychological impairments were exacerbating her pain, and that she has complained of panic attacks which would affect her ability to work. She also complains of a mild decrease in concentration and memory. Grube argues that the ALJ erred in not presenting these mental issues to the VE to determine how they would affect her ability to work. But the consultative examiner found her general memory "to be relatively adequate, if only very slightly affected" and her concentration "to be generally adequate." (R. 308.) Grube has not identified any medical source who found that her concentration was limited.

Among her other arguments, Grube persuasively argues that the ALJ erred in evaluating her fibromyalgia, in weighing Dr. Rosch's opinions, and in rejecting Dr. Hensley's opinion about the need for a cane. As the Seventh Circuit observed years ago,

the symptoms of fibromyalgia "are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.  The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness … [and] multiple tender spots[.]"  *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996).  And as another district court has noted, "normal gait … is not inconsistent with persistent pain caused by the fibromyalgia.  There is no evidence indicating that fibromyalgia causes limitations in strength, range of motion, or an inability to step onto an examination table or walk.  On the contrary, fibromyalgia is characterized by widespread pain, not by an inability to walk or a decrease in range of motion."  *Harvala v. Colvin*, No. 14 C 1176, 2015 WL 5177608, at \*8 (N.D. Ill. Sept. 3, 2015) (citing Mayo Clinic: Fibromyalgia).  In addition, "fibromyalgia patients manifest normal … neurological reactions[.]"  *Davila v. Comm'r of Soc. Sec.*, 993 F. Supp. 2d 737, 754 (N.D. Ohio 2014).

Despite noting that Grube's fibromyalgia was evaluated in accordance with Social Security Ruling 12-2p (R. 21), the ALJ's evaluation emphasized the absence of findings that are irrelevant to the existence and severity of fibromyalgia such as limitations of motion, gait abnormality, neurological deficits.  (R. 22.)  The ALJ also erred in relying on Grube's ability to get on and off the examination table without difficulty.  (R. 23.)  And she erred in concluding that the clinical findings in 2011 failed to demonstrate significant tenderness.  (*Id.* at 22.)  (The ALJ also erred in finding no evidence of decreased range of motion.)  The Commissioner argues that the ALJ's focus on clinical findings not contemplated by SSR 12-2p was harmless because the evidence did not support Grube's claims of disabling symptoms from fibromyalgia.  In particular, the Commissioner cites

to infrequent office visits and infrequent fibromyalgia flare ups. But this attempt to defend the ALJ's decision on grounds not embraced by the ALJ violates the *Chenery* doctrine, *see SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

As for Dr. Rosch's opinion of Grube's limitations in standing and walking, the ALJ rejected her opinion because there was only one instance of a gait abnormality during an acute exacerbation of Grube's symptoms and the record documented no significant gait abnormality or neurological defect. In doing so, the ALJ erred. While Dr. Rosch could have provided a more detailed explanation for her restrictions, she indicated that her assessment of Grube's limitations was supported by the diagnosis of fibromyalgia (R. 683) and Grube's history of fatigue and pain (R. 685), all of which could support the limitations as to standing and walking. (Grube also mentions the ALJ's decision not to credit Dr. Rosch's opinion as to environmental restrictions, but she does not develop any argument about it and therefore has waived the issue. *See, e.g.*, *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014) ("Perfunctory and undeveloped arguments are waived.") (quotation omitted).)

Turning to the cane, in July 2012, Grube's primary care physician Dr. Mary Beth Hensley, M.D., prescribed Grube a cane "for ambulation and stability." (R. 621.) The ALJ found the evidence failed to demonstrate that the use of an assistive device was medically necessary and did not account for the use of a cane in her RFC finding. Her reasoning was three-fold: Dr. Hensley's treatment records failed to document clinical findings of gait abnormality or neurological defects supporting the medical need for an assistive

11

device; other clinical findings from 2011 and 2012 indicated Grube had a normal gait and was neurologically intact; and recent medical evidence failed to substantiate Grube's actual use of a cane.

In prescribing the cane, Dr. Hensley noted the diagnoses of myalgia, fibromyalgia, myositis, and pain in muscle.  Her records indicate that Grube was seen for an office visit on July 5, 2012 for complaints of musculoskeletal pain and associated symptoms including decreased mobility, joint instability, joint tenderness, and tingling in the legs and weakness.  (R. 622, 623.)  Grube said she was in a fibromyalgia flare up.  (*Id.*)  On exam, Dr. Hensley noted that Grube's overall appearance was "chronically ill-appearing."  (R. 623.)  The Commissioner argues that the ALJ focused on the clinical findings directly relevant to the need for a cane such as gait abnormalities or neurological deficits, and found no such evidence in Dr. Hensley's treatment records.  However, even if such findings were more relevant to a need for an assistive device than decreased mobility, joint instability, joint tenderness and leg weakness, the treating physician did prescribe a cane for ambulation and stability.  She presumably concluded that there was enough of a need for a cane.  An assistive device can provide one with better balance and support for walking.  And while the record shows that Grube did not always use a cane, a person with fibromyalgia can have good days and bad days.  *See* SSR 12-2p (indicating that "the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days").  While Grube might not need the cane on good days, she may need it on bad days.

Grube next contends that the ALJ erred in deciding that her daily activities demonstrated a higher level of functioning than she alleged and erred in failing to make an explicit credibility finding.  A court "will overturn an ALJ's credibility determination only if it is 'patently wrong.'"  *Stepp*, 795 F.3d at 720 (quoting *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)*).*  In making a credibility determination, the ALJ should consider factors such as the objective medical evidence, the claimant's daily activities, allegations of pain, the effectiveness of medication, and the types of treatment for pain or other symptoms.  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); 20 C.F.R. § 404.1529(c)(3).

Although the ALJ never made an explicit credibility finding, her decision reflects consideration of the factors bearing on Grube's credibility such as the location, duration, frequency and intensity of Grube's pain and other symptoms (R. 22); clinical findings (R. 22); factors that precipitate and aggravate her symptoms such as environmental factors, standing, walking, and sitting (R. 24); the type, dosage, effectiveness and side effects of her medications (R. 24-25); treatment other than medications she has received for relief of pain and other symptoms (R. 25); and her activities of daily living (*id.*), among other factors.  The ALJ compared Grube's testimony about her daily activities to her activities as reported at other times, by her son as well as by Grube herself.  Though Grube testified to a decrease in her daily activities, the ALJ reasoned that the record did not show a corresponding increase in the severity of her impairments or her treatment.  (R. 25.)  Therefore, the ALJ did not credit Grube's allegations, and concluded that her daily activities showed a higher level of functioning than her allegations suggested.  (*Id.*)  The

13

ALJ's reasoning may have been appropriate. *See, e.g.*, *Stepp*, 795 F.3d at 720 ("[A]n ALJ is 'free to discount the applicant's testimony on the basis of the other evidence in the case' as '[a]pplicants for disability benefits have an incentive to exaggerate their symptoms.'") (quoting *Johnson v. Barnhart,* 449 F.3d 804, 805 (7th Cir. 2006)).  That said, however, as indicated, the ALJ erred in evaluating Grube's fibromyalgia, in weighing Dr. Rosch's opinion, and in rejecting Dr. Hensley's prescription of a cane.  Further consideration of these matters on remand may lead the ALJ to a different conclusion regarding Grube's credibility.  Once the ALJ has reevaluated this other evidence, she should reevaluate the credibility of Grube's allegations about pain and other symptoms and their limiting effects.

Lastly, Grube argues that the ALJ erred in evaluating the VE's testimony. As a general rule, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).  As noted, on remand the ALJ should reevaluate the evidence regarding Grube's fibromyalgia, Dr. Rosch's opinion as to Grube's standing and sitting limitations, and the need for a cane.  Although the ALJ's hypothetical to the VE adequately accounted for the limitations that the ALJ found Grube to have, further consideration of the evidence on remand may lead the ALJ to a different RFC determination.  If so, the ALJ may need to pose a different hypothetical to the VE.

## III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED and REMANDED** for a rehearing consistent with this opinion.  The ALJ should reevaluate

14

Grube's fibromyalgia, reconsider the weight given to Dr. Rosch's opinions regarding Grube's standing and sitting limitations, and reconsider Grube's medical need for a cane.

      Entered this date:  09/24/2015

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution: to counsel of record

15